**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **SHAYLA CARMICHAEL,** *Plaintiff,* <br><br> v. <br><br> **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF HUMAN SERVICES,** *Defendant.* | **Civil No. 24-6307** |

**MEMORANDUM**

**Costello, J.**                                                                                      **June 26, 2026**

Plaintiff Shayla Carmichael is a former employee of Defendant Commonwealth of

Pennsylvania Department of Human Services ("DHS").  Plaintiff alleges that she was subjected

to a hostile work environment, sex discrimination, and retaliation by her supervisor during her

employment with Defendant.  She brings hostile work environment, sex-based discrimination,

and retaliation claims under Title VII, the Pennsylvania Human Relations Act ("PHRA"), and

the Philadelphia Fair Practices Ordinance ("PFPO").  Defendant moves for summary judgment

on all claims.  For the reasons that follow, the Court will grant Defendant's motion.

**I.      BACKGROUND[1]**

      **A.      The Inappropriate Remarks by Plaintiff's Supervisor**

Plaintiff's claims are based on a series of inappropriate remarks made by her supervisor,

Karen Johns.  First, in May 2023, there was a "free pretzel day" at the DHS office where Plaintiff

worked.  ECF No. 17-2 ¶ 7.  Johns told Plaintiff that she could have a pretzel because she didn't

---

[1] The facts in this matter are largely undisputed and supported by contemporaneous documentation, which Plaintiff does not rebut, except to object to any characterizations of those documents.  *See generally* ECF No. 17-2.

"need to 'watch [her] figure.'"  *Id.* ¶ 10.  Johns went on to say that "[w]hen she wants to look snatched like [Plaintiff], she puts on a girdle."  *Id.* ¶ 11.

Second, in June or July 2023, Plaintiff and Johns had a conversation regarding the office dress code policy, during which Johns told Plaintiff to "'cover [her] butt up' because 'men will look at [her].'"  *Id.* ¶ 13.  Johns then told Plaintiff that when she was younger, she also "had a big butt."  *Id.* ¶ 14.  Johns also referred to a former coworker "who was shaped like [Plaintiff] with a big butt," and it "became a problem in the office, and [Johns] didn't want [Plaintiff] to have the same problem."  *Id.* ¶ 15.  Later, Johns told another coworker outside of Plaintiff's presence to not dress like Plaintiff and to "cover her butt up."  *Id.* ¶ 19.

Third, at some point during the summer of 2023, Plaintiff discussed an open teaching position with the Pennsylvania Department of Corrections, which a coworker encouraged her to apply for due to her background in education.  *Id.* ¶¶ 21-22.  Johns interjected and said that Plaintiff "can't work for the prisons" because she is "too shapely" and "[t]he inmates will be all over her."  *Id.* ¶ 23.

Fourth, at some point during the summer of 2023, Plaintiff was attending a training when another supervisor came in to speak with Johns.  *Id.* ¶ 24.  That supervisor picked up Plaintiff's pocketbook and started "parading around the training room."  *Id.* ¶ 25.  During this incident, Johns said that Plaintiff "was the type of young girl to make other people jealous" because she has "a nice shape."  *Id.* ¶ 26.  Johns made additional remarks about Plaintiff being a homeowner, her "shape and [her] butt," and about Plaintiff wearing "designer items which would make someone jealous."  *Id.*

2

**B.**    **Plaintiff's Complaint, DHS's HR Investigation, and Plaintiff's Resignation**

On September 20, 2023, Plaintiff reported these interactions with Johns to DHS Income Maintenance Administrator, Kimberly Maw. *Id.* ¶ 31. Maw provided a witness statement to memorialize Plaintiff's complaint and told Plaintiff she would speak to the management team. *Id.* ¶ 33. Maw conferred with a few other members of management to discuss Plaintiff's complaint and next steps. *Id.* ¶ 34. Maw instructed Plaintiff to complete a witness statement, which she did on September 21, 2023. *Id.* ¶¶ 35-36. Plaintiff's complaint includes Johns's remarks about the dress code, Plaintiff's body, and the teaching position with the Department of Corrections, but not the pretzel day incident or the pocketbook incident. *See* ECF No. 12-7. On September 28, 2023, the Human Resources ("HR") director for Defendant's Philadelphia field office corresponded with other senior members of Defendant's HR team about various complaints against Johns, including Plaintiff's. *See* ECF No. 12-8. They decided that the district would investigate the complaints against Johns. *Id.* The HR director also recommended that Johns take courses on sexual harassment and microaggressions in the workplace. *Id.*

On October 19, 2023, Plaintiff called Natasha McDowell, an HR analyst, to follow up about the witness statement she submitted to Maw. ECF No. 17-2 ¶ 44. McDowell contacted the other members of the HR team included on the September 28 email informing them of the call and asking if they can "look into this." *Id.* ¶ 45. That team decided to refer Plaintiff's complaint to the Bureau of Equal Employment Opportunity ("BEEO") for an investigation. *Id.* ¶ 48. On October 25, 2023, an HR manager contacted Plaintiff to discuss her complaint. *Id.* ¶¶ 51-52. She forwarded those responses to the BEEO investigator responsible for Plaintiff's case. *Id.* ¶ 55. On October 27, 2023, the BEEO investigator concluded that Plaintiff's complaint "is more of a[n] inappropriate conduct situation with [Johns] than sexual harassment." *Id.* ¶ 56. The

BEEO investigator suggested that Defendant's HR team treat this as "an opportunity to inform [Johns] of the inappropriate conduct . . . so the behavior will cease and indicate that retaliation is prohibited." *Id.* ¶ 57.  He recommended sending Plaintiff a "closeout letter" explaining that the BEEO did not have jurisdiction to investigate her claims but that they have been passed on to HR.  *Id.* ¶ 58.  Defendant agreed and responded that HR planned to have "local management investigate this matter, with HR guidance."  *Id.* ¶ 59.

Plaintiff resigned on November 3, 2023.  *Id.* ¶ 63.  Her resignation letter stated that she had "been experiencing a hostile environment, intimidation, harassment, and unpleasant body shaming encounters with [Plaintiff's] supervisor" that had "not been resolved."  *Id.* ¶ 64. Defendant's HR nevertheless continued investigating Plaintiff's complaint.  *Id.* ¶ 67.

### C.    Defendant's Motion

Plaintiff subsequently brought this action, bringing hostile work environment, sex-based discrimination, and retaliation claims under Title VII, the PHRA, and the PFPO.  *See generally* ECF No. 1.  Defendant moved for summary judgment on all claims.  *See generally* ECF No. 12.

Defendant raises three arguments in support of its motion.  First, Defendant argues that Plaintiff's hostile work environment claim fails because she cannot prove that the alleged discrimination was because of her sex or that the discrimination was severe or pervasive.  *Id.* at 7-12.  Defendant contends that even if Plaintiff could establish these elements of her prima facie case, Defendant cannot be held liable under *respondeat superior* because (1) there was no adverse employment action; (2) Defendant exercised reasonable care in its investigation into Plaintiff's complaint; and (3) Plaintiff's resignation was unreasonable.  *Id.* at 12-17.  Second, Defendant argues that Plaintiff's sex-based discrimination and retaliation claims fail because she

was not subjected to an adverse employment action.  *Id.* at 17-21.  Finally, Defendant argues that it enjoys Eleventh Amendment immunity from Plaintiff's PHRA and PFPO claims.  *Id.* at 21-23.

Plaintiff opposed the motion.  *See generally* ECF No. 17-1.  She argues that, looking at the "whole picture" of Johns's behavior, there is sufficient evidence to support her hostile work environment claim.  *Id.* at 4-5.  Plaintiff disagrees that she was not subjected to an adverse employment action.  She argues that Defendant "fail[ed] to address the discriminatory conduct" by Johns, which "resulted in Plaintiff's constructive discharge."  *Id.* at 10.

## II.        LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine."  *Bennett v. SEPTA*, 23cv1271, 2024 WL 404959, at *6 (E.D. Pa. Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, 24cv1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025) (internal citations omitted).  A fact is material if it "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A dispute over a material fact is 'genuine' if, based on the evidence, 'a reasonable jury could return a verdict for the nonmoving party.'"  *Bennett*, 2024 WL 404959, at *6 (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (internal citations omitted).  "When the movant is the defendant, they have the burden of demonstrating that the plaintiff 'has failed to establish one or more essential elements of her case.'"  *Bennett*, 2024 WL 404959, at *6 (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)).  "In

such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If Plaintiff fails to raise a genuine dispute of material fact as to any element of his prima facie case, summary judgment in favor of Defendant is warranted." *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 433 (E.D. Pa. 2023) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

The Court does not weigh evidence or make credibility determinations at the summary judgment stage. Rather, it simply determines "whether there is a genuine issue for trial." *Bennett*, 2024 WL 404959, at *6 (citing *Anderson*, 477 U.S. at 249). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a triable issue; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.      DISCUSSION

### A.      Plaintiff's Hostile Work Environment Claim

To raise a hostile work environment claim against an employer on a theory of sexual harassment, a plaintiff must establish that (1) she "suffered intentional discrimination because of [her] sex[;] (2) the discrimination was severe or pervasive[;] (3) the discrimination detrimentally affected the plaintiff[;] (4) the discrimination would detrimentally affect a reasonable person in [similar] circumstances[;] and (5) the existence of *respondeat superior* liability." *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). Defendant challenges Plaintiff's ability to establish the first, second, and fifth elements of her hostile work environment claim. *See* ECF No. 12 at 7.

Title VII prohibits harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotations omitted). "Title VII is not intended as a 'general civility code,' and requires that 'conduct must be extreme' to constitute the kind of 'change in the terms and conditions of employment' the statute was intended to target." *Walls v. Abington Surgical Ctr.*, 758 F. Supp. 3d 376, 388 (E.D. Pa. 2024) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

"The Supreme Court has instructed lower courts 'to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 388-89 (quoting *Faragher*, 524 U.S. at 787-88); *see also Mandel*, 706 F.3d at 168 (district courts "must consider the totality of the circumstances, rather than parse out the individual incidents, to determine whether the acts that collectively form [a hostile work environment] are severe or pervasive").

Considering the circumstances as a whole, the Court concludes that the four remarks made by Johns did not create sufficiently severe or abusive work conditions to support Plaintiff's hostile work environment claim. Johns's comments about Plaintiff's body, appearance, and clothing were undoubtedly crass and inappropriate. But "the purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted." *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 266 (E.D. Pa. 2015) (citing *Mandel*, 706 F.3d at 165-67) (further citations omitted).

Courts have found that similar inappropriate remarks about a plaintiff's appearance did not constitute a hostile work environment.  *See Shramban v. Aetna*, 115 F. App'x 578, 579-80 (3d Cir. 2004) (affirming grant of summary judgment where hostile work environment claim was based on string of offensive comments about plaintiff's personal life, jewelry, clothes, and appearance).  Indeed, courts in this Circuit have found that far more severe, inappropriate, and crude remarks have not risen to the level of creating a hostile work environment.  *See, e.g.*, *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 25, 30 (3d Cir. 2010) (holding that defendant's "regularly [making] comments about the size of his genitalia and about the intimate details of his sexual relationships," referring to women as "bitches," and telling "of a colleague frequenting 'titty bars'" did not rise to the level of "severe or pervasive" harassment); *Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 439-40 (E.D. Pa. 2001) (remarks that plaintiff looked "fresh," sexual propositions toward plaintiff, and asking if plaintiff wanted to join harasser for a "good time" were "loathsome and inappropriate" but not sufficiently severe or pervasive).

The frequency of Johns's remarks also do not amount to "pervasive" harassment.  To constitute a hostile work environment, discriminatory remarks "must be more than a few isolated incidents."  *Powell-Folks v. Villanova Univ.*, 24cv5065, 2025 WL 756538, at *4 (E.D. Pa. Mar. 10, 2025) (quotations omitted); *see also Faragher*, 524 U.S. at 788 ("sporadic use of abusive language" is insufficient to sustain hostile work environment claim) (internal citation omitted). Rather, "there must be a steady barrage" of discriminatory comments.  *Powell-Folks*, 2025 WL 756538, at *4; *Tourtellotte v. Eli Lilly & Co.*, 09cv0774, 2013 WL 1628603, at *8 (E.D. Pa. Apr. 16, 2013), *aff'd*, 636 F. App'x 831 (3d Cir. 2016) ("a few unpleasant incidents" do not rise to "extreme" conduct constituting hostile work environment).

The exact timeline here is a little uncertain because Plaintiff only links a few remarks to sometime in the summer of 2023 and does not give exact dates. But the record shows that, at most, Johns made four inappropriate remarks over the course of a three-to-four-month period, beginning in May of 2023 and ending in August/September of 2023. *See supra* at 1-2. This pace and frequency more closely resemble "sporadic and isolated instances of discomfort" rather than the barrage of continued harassment necessary to establish pervasiveness. *See Powell-Folks*, 2025 WL 756538, at *4; *see also Rosati v. Colello*, 94 F. Supp. 3d 704, 716 (E.D. Pa. 2015) (three specific incidents of harassment over a four-month period "is not a continuous period of harassment").

The Court need not address the remaining disputed elements of Plaintiff's hostile work environment claim, as the record is clear that Plaintiff cannot establish she was subjected to severe or pervasive harassment. Plaintiff's failure of proof on this element requires the Court to enter summary judgment in Defendant's favor. *See Celotex*, 477 U.S. at 318-19 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and warrants grant of summary judgment on that claim).

### B.    Plaintiff's Discrimination and Retaliation Claims

To establish both discrimination and harassment claims under Title VII, a plaintiff must show that she suffered an adverse employment action. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (setting forth elements of Title VII discrimination claim); *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (setting forth elements of Title VII retaliation claim).

Plaintiff is proceeding on a theory of constructive discharge, which can amount to an adverse employment action. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 247 n.32 (3d Cir.

2006)); *Chandler v. La-Z-Boy, Inc.*, 621 F. Supp. 3d 568, 575 (E.D. Pa. 2022). "'A constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Rabuffo v. VCA, Inc.*, 222 F. Supp. 3d 406, 417 (E.D. Pa. 2016) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887 (3d Cir. 1984)). This is a higher bar than the minimum level of severity or pervasiveness required to establish a hostile work environment. *Chandler*, 621 F. Supp. 3d at 575 (citing *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006)). As described above, *supra* at 6-9, Plaintiff cannot show that she was subjected to sufficiently severe or pervasive discrimination to support her hostile work environment claim. It follows that she cannot meet the higher level of severity or pervasiveness necessary to demonstrate she was constructively discharged. *See Chandler*, 621 F. Supp. 3d at 575.

Even so, there is simply nothing in the record suggesting that Plaintiff's resignation had anything to do with Defendant's conduct other than her own conclusory, self-serving statements that she resigned due to "[un]resolved" issues creating a "hostile environment." ECF No. 17-2 ¶ 64. At worst, Defendant was slightly delayed in investigating Plaintiff's complaint about Johns. But the record shows that within a few months of the initial complaint, Defendant conducted an investigation and planned to further investigate even after the BEEO found that there was no sex-based discrimination or harassment. *See supra* at 3-4. Defendant's conduct was eminently reasonable and cannot support a finding by this Court that it "knowingly permit[ted] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *See Rabuffo*, 222 F. Supp. 3d at 417 (internal quotations omitted).

10

Because Plaintiff cannot establish that she was subjected to an adverse employment action, the Court must grant summary judgment on both of Plaintiff's Title VII claims. *See Celotex*, 477 U.S. at 323-24.

### C.        Plaintiff's PHRA and PFPO Claims

The Court will also grant summary judgment in Defendant's favor on Plaintiff's PHRA and PFPO claims because Defendant is subject to immunity on those claims. The Eleventh Amendment provides that states are immune from any lawsuit "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity applies to "unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (internal citations omitted). Under the Eleventh Amendment, states and arms of the states are generally immune from federal suit absent consent by the state or congressional abrogation. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70, 279-80 (1997); *Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 269 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2670 (2021); *accord Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545-46 (3d Cir. 2007). Pennsylvania has not waived its immunity from suit in federal court for claims brought under the PHRA or PFPO. *See Patterson v. PA Off. of Inspector Gen.*, 243 F. App'x 695, 696 (3d Cir. 2007) (citing 42 Pa. Cons.Stat. Ann. § 8521(b)).

### IV.        CONCLUSION

Because there is insufficient record evidence to support Plaintiff's prima facie case for all three of her Title VII claims, the Court will grant summary judgment in Defendant's favor on those claims. The Court will also grant summary judgment in Defendant's favor on Plaintiff's

remaining state and local claims because Defendant enjoys immunity from suit on those claims in federal court.  An appropriate Order will follow.

BY THE COURT:

MARY KAY COSTELLO
United States District Judge

12